ANNA M. COOK, Administratrix of John F. Cook, deceased, Appellant, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

In an action against a railroad company for injuries resulting from alleged negligence of railroad employees, the evidence as to such negligence, also as to the freedom from negligence of the injured party, was very conflicting; *held*, that in such case, the question should have been submitted to the jury.

On a question of nonsuit, all disputed facts are to be decided in favor of the plaintiff.

ON the 17th of September, 1864, John F. Cook and John Brennan were returning from their work, in a one-horse wagon. Their course was northerly, up Hamburg street, in the city of Buffalo. While crossing the defendant's railroad, as it passed over that street, the wagon was struck by a train of cars which was backing toward the city of Buffalo. Both the occupants of the wagon were thrown out, and Cook was instantly killed. The plaintiff, as his administratrix, brings this action to recover damages for such killing. On the trial at the Circuit, the plaintiff was nonsuited. The General Term of the eighth district affirmed the judgment entered upon this nonsuit, and the plaintiff now appeals to this court. The facts are stated in the opinion of the court.

*John C. Strong*, for the appellant.

*A. P. Laning*, for the respondent.

HUNT, J. Two questions were presented upon this trial: First, were the defendants guilty of negligence on the occasion in question; secondly, was the deceased free from negligence. To justify a nonsuit, one of these questions must be held against the plaintiff, and so clearly that there is no room for doubt. On a question of nonsuit, all disputed facts are to be decided in favor of the plaintiff, and all presumptions and inferences which he had a right to ask from the jury are to be conceded to him. As we have frequently and recently

held, we do not weigh or measure the evidence. That is the province of the jury. If there is evidence in favor of the plaintiff's claim on which the jury would have been justified in giving her a verdict, it is not for the court to say whether it has been overbalanced or outweighed by the conflicting testimony. (*Solmes* v. *The Rutgers Fire Insurance Company*, and railroad cases cited, *post.*)

It appeared in evidence that the train approached the crossing in question by a curve, and that the view, in the direction from which it came, was cut off by houses and by a high fence. It appeared that the deceased and his companion, who is now also dead, were sober, steady men, and that they were sober on the evening in question. They approached the crossing slowly, in the dusk of the evening, and, as it appeared by the evidence of five witnesses, there was no flag-man visible at the station, and no warning was given that it was not safe to cross, although a flag-man was regularly stationed at that point, for the purpose of preventing the passage when it was unsafe to cross. It appeared by the evidence of four witnesses that no bell was rung upon the approaching train, and that no whistle was sounded from it, until the collision took place. An ordinance of the city of Buffalo was introduced in evidence, by which trains were prohibited from passing this point at a rate of speed greater than that of six miles per hour. It was proved by several witnesses that this train was crossing at a rate of speed equal to eight or ten miles per hour.

The defendants, on the other hand, proved by the fireman of the train that the train was crossing at a speed not exceeding five miles per hour, that the whistle was blown twice, and that the bell was rung as they crossed the street. He further testified that Scanlin was the regular flag-man at this point, but that on this occasion one Sullivan stood near the track, and about ten or twelve feet from the shanty, on Hamburg street. Another fireman testified to the same facts, except that he testified that he did not see a flag-man there; that he did see a cripple there, but that he did not know Sullivan. The first of these firemen stated that he remem-

bered that they rang the bell at the crossing, because they always did ring the bell at such a crossing. The other testified that he fixed the rate of speed, at which they crossed, from the fact that they always came slowly around the curve, and he fixed it on this occasion from that usual way. The conductor was also sworn, and he testified that he discovered the wagon on the track, and whistled or signaled to break down. "The man was stopped then, but he started again, and I immediately halloed to him to hold on, and then I ran to the second car, and I had not more than got there than they blowed the second whistle * * *. The men came to a full stop when they saw the train, but they jerked the line again and started, and as quick as I saw them I halloed, because I saw they could not cross safely. I halloed to them to hold on, and gave a signal to break and stop the engine. With reference to Hamburg street, the men were in the middle of the road; I think the forepart of the horse was pretty near on the southern part of the track; the cars are thirty feet in length." On his cross-examination he said: "When I first saw them they were driving on the track and had stopped; I was within four cars length of Hamburg street; when I first saw them they were driving up the track; I told them to stop; I was four cars length from them; they stopped on the south track; the wagon was in the center of that track when I first noticed them." Daniel Sullivan testified that Scanlin was the flag-man at this point, and that at his request he held his flag for him, while he went to his supper, on the occasion in question. That he saw the horse and wagon coming up the street, and saw the train approaching, and waived his flag under the horse's nose; stopped the wagon for about two minutes; that the man said the horse should go through; whipped him up and he went on to the track. Thomas Smith and Rosina Smith corroborated Sullivan in the most important portions of his testimony. Other witnesses were called to discredit Sullivan's evidence, one of whom testified that Sullivan had said to her that he knew nothing about the accident, that he was in the shanty and that he knew nothing about it.

The rule is quite settled, that in the management of their road and machinery, a railroad corporation is bound to use the utmost care and vigilance to avoid the dangers attending a collision. It is equally well settled that the freedom from negligence which is required of a plaintiff, involves only that ordinary prudence and attention which sensible men are accustomed to give in certain cases. Perfect composure in danger, entire self-possession, and an accurate decision upon the wisest course to be adopted in the emergency, are not required. The recent elaborate discussions in *Ernst* v. *The Hudson River R. R. Co.* (35 N. Y. 9); *Beisegel* v. *The N. Y. Central R. R. Co.* (34 id. 622); *Mackey* v. *The Same* (35 id. 75); *Brown* v. *The Same* (34 id. 405), render it unnecessary to examine either the authorities or the principles upon which this case should be decided. Upon these cases, the question upon each of the points should have been submitted to the jury, and their decision would have been conclusive. Indeed, upon the evidence of the defendant's conductor himself, I think it was a case for the jury. It was for them to decide the conflicting evidence before them as to the defendant's negligence. It was for them also to draw the conclusions whether the plaintiff was in fault, whether and how he could have escaped the imminent dangers that pressed him, and whether he heard or understood the directions or signals that were given to him.

I think there should be a new trial, with costs to abide the event.

All the judges concurring, except DAVIES, Ch. J., and GROVER, J.,

Judgment reversed, and new trial ordered.