## Phillips *vs.* The Rensselaer and Saratoga Railroad Company.

In an action to recover damages for a personal injury occasioned by negligence, if the facts proved establish negligence on the part of the defendant, the court should not order a nonsuit, unless the conduct of the plaintiff was, *per se,* negligence contributing to the injury.

It is the duty of a passenger who intends taking the cars, upon a railroad, to use reasonable diligence in inquiring as to the time and manner of entering and taking his seat therein. But if the railroad company has made no rules and regulations on that subject; or, if made, has given them no publicity by signs, card-boards or other notices, as to a particular station at which they receive and discharge passengers; then the case is left to be settled by the common law duties and obligations of the railroad corporation, and the rights of the passenger who has purchased a ticket and is entitled to be carried therefor, in the cars.

In such a case, the passenger is left to find out, as best he can, as to the side, and place, and time, at which he may enter the cars; and he is justified in relying upon his observation of the custom of the company on prior occasions, as to the time, place and manner of receiving and discharging passengers at the same place, and may assume such to be the rules and regulations of the company, in that respect, and act upon that assumption, provided he acts with such prudence and care as a reasonable man is bound to exercise.

Where there was an absence of any passenger platform, to indicate the proper place for passengers to enter the cars; and though there was a narrow plank

Phillips *v.* Rensselaer and Saratoga Railroad Company.

walk on the east side of the track, it was the custom of the railroad company to receive and discharge passengers on both sides; and the plaintiff himself, on former occasions, had been received and discharged on the east side of the track, as had other passengers, all along, for a distance of over 200 feet; *Held* that the company having permitted, if they had not actually adopted, this method of receiving passengers at the station in question, they must be regarded as responsible for the safety of the regulation. That it amounted to an invitation, at least to those who had been thus received and discharged, to enter the cars upon either side of the track.

Although, ordinarily, the conceded fact that a passenger attempting to get upon a train while it is in motion, is, *per se*, such an act of negligence on his part, as to bar a recovery for injuries sustained, yet this is not an invariable rule. What is common or ordinary neglect, is much more matter of fact than of law. And in such a case, where the negligence of the plaintiff is claimed to have contributed to the injury, all the facts and circumstances constituting negligence, or those that are proper to be considered, should be left to the jury.

Where the plaintiff offered to prove that before the time of the injury sued for, he had got on and off the cars, at that place, when they stopped no more than they did at the time in question; and that he had knowledge that they frequently did not stop, any more than to slow down as they did at this time; *Held* that the judge erred in rejecting the evidence offered, and directing a nonsuit. That he should have submitted the testimony to the jury, upon a proper charge as to the law. MILLER, P. J., dissented.

THIS was a motion by the plaintiff to set aside a nonsuit granted by Justice Hogeboom at the Albany circuit, in 1866, and for a new trial.

The action was brought to recover damages for personal injuries, alleged to have been sustained by the plaintiff on the 25th of April, 1865, at West Troy, in consequence of the negligence of the defendant. The accident occurred on the day of the public funeral of President Lincoln, at Albany.

At the close of the plaintiff's testimony, the defendant asked for a nonsuit, upon the following grounds:

1st. That the testimony shows no negligence on the part of the defendant.

2d. That from the undisputed evidence, the plaintiff was guilty of negligence.

3d. That the evidence shows that the plaintiff was not free from negligence.

4th. That the evidence fails to show negligence on the part of the defendant, or freedom from negligence on the part of the plaintiff.

5th. That upon the whole case the plaintiff cannot recover.

The court refused to grant this application, but at the conclusion of the testimony the counsel for the defendant renewed his motion for a nonsuit or dismissal of the complaint on the same grounds as before stated, which was resisted by the counsel for the plaintiff, who claimed that the whole case, and especially all the questions of negligence involved in the case, should be submitted to the jury. His honor thereupon granted the motion for a nonsuit, to which the counsel for the plaintiff excepted.

On motion of the plaintiff's counsel, the court ordered that the plaintiff should have sixty days to make a case, with exceptions, and that the same should be heard in the first instance at the general term, with a stay of proceedings in the meantime.

The material facts sufficiently appear in the opinion of the court.

*L. Tremain,* for the plaintiff.

*J. H. Reynolds,* for the defendant.

POTTER, J. Two leading features in this case were presented to the judge on the trial, upon the evidence, and upon which he was called to decide as questions of law, viz : 1st. Whether the defendant had been guilty of negligence; if so, then 2d. Whether the plaintiff had been guilty of such negligence on his part as to preclude his right to recover damages. These questions of law still depend upon the evidence in the case, and require exam-

ination by this court, upon the review. This review is to be made in the light of a well settled doctrine of law, that when there are facts that tend to show negligence, which are controverted questions of fact, the case is one for the jury; unless the act is negligence *per se*, or the weight of evidence is so preponderating that the court would set aside a verdict founded upon it. So, also, to justify a nonsuit, all disputed facts are to be decided in favor of the plaintiff; and all presumptions and inferences which the plaintiff had a right to ask from the jury, are to be conceded to him. (*Cook* v. *N. Y. Cent. Railroad Co.*, 3 *Keyes*, 476. *Solmes* v. *Rutgers Fire Ins. Co.*, *Id.* 419. *People* v. *Roe*, 1 *Hill*, 471, *n. a.* *Foot* v. *Wiswall*, 14 *John.* 304.)

The case shows that the injury to the plaintiff occurred in April, 1865, (upon the day of the funeral of the deceased President Lincoln at Albany,) at the village of West Troy. A large concourse of people were waiting at that place to be carried to Albany. One train going in that direction, filled with passengers, had passed without stopping, though they slowed a little, and as they passed some one hallooed from the cars, that there was to be another train along. There was evidence that when the second train came along, there were one or two hundred people at West Troy, waiting to take the cars. There was a station house on the west side of the track, at which tickets were sold, on that day, but usually no tickets were sold at that station. Passengers were received and discharged at that station, sometimes, by slowing the cars, without stopping, though certain of the trains, two at least, were advertised to stop, and did stop. Passengers were received and discharged upon both sides of the track, east and west, as much on one side as the other. The station house was between Union street on the north, and Genesee street on the south, which streets run easterly and westerly, and are between 200 and 300 feet apart. Passengers, before that time, had been received and discharged at Genesee street, and be-

tween that and Union street, along the track. On the day in question the waiting passengers were all along the track between Genesee and Union streets; the largest proportion on the west side; some fifty or about, went over on the east side. On the east side of the track there was a freight platform above thirty feet in length, erected by the defendant and used for freight; above three feet in height, made by driving heavy posts into the ground and timbers nailed to them, and plank floor thereon. When constructed it was sixteen inches from the body of the cars that passed, but by carts backing against it, it had been shoved over towards the track, so that on the day in question, its distance from the cars was less than seven inches. The train in question was a very long one, had commenced slowing, and at the time was under slow motion. There was a call from the cars, "West Troy station," before any attempt to get on; the plaintiff and his brother were among the passengers on the east side of the track, the plaintiff having previously bought his ticket, and very soon before the arrival of the cars, having gone over to the east side of the track, thinking there would be a better chance to get on. After the station was called, the plaintiff attempted to get on the cars; people were jumping on all along the train, on both sides of the track. Where the plaintiff attempted to get on, was the fourth or fifth car from the locomotive engine, and was at the distance of two cars' length from the freight platform. The plaintiff did not know that there was any particular place or side from which to get on; in attempting to get on he took hold of the iron handles of the cars and stepped up on the first step. There were two men ahead of him, on the car, so he could not get any further up the steps; the cars were then jerked ahead, and jerked the plaintiff from the steps, but he did not let loose from the handle of the iron rod; he recovered back on the step, but had no more than recovered back, before he was knocked off by this freight

Phillips *v.* Rensselaer and Saratoga Railroad Company.

platform and rolled along between the car and the platform, from which he received the injury for which he brought the action.

The above may be regarded as the facts which, by the rule we have above laid down, (though there is evidence controverting them,) the judge was bound, on a motion to nonsuit, to regard as the facts in the case; because they were testified to by witnesses competent and unimpeached. If these facts establish negligence on the part of the defendant, the judge should not have nonsuited, unless the conduct of the plaintiff was, *per se,* negligence, contributing to the injury. This is the question first to be considered.

1st. As to the negligence of the defendant.

There is, no doubt, a common law duty devolving upon railroad companies to provide safe and reasonable accommodations at their stations, or at the places where they receive and discharge their passengers; and they possess the power to make all reasonable rules and regulations as to the time, place and manner in which passengers shall enter and be discharged from the cars, and such rules and regulations may be made public, or be otherwise made known, by signs, card-boards, or notices posted at their stations, or in their cars, or by the conductors or other agents who have charge of the cars, and I think it is equally the duty of the passenger who intends taking the cars, to make reasonable diligence or inquiry as to the time and manner of entering and taking his seat therein. But if the railroad company shall make no such rules and regulations, or if made, shall give them no publicity, by signs, card-boards, or other notices, as to a particular station at which they receive and discharge passengers, then, I think, the case is left to be settled by the common law duties and obligations of the railroad corporation and the rights of the passenger who has purchased a ticket and is entitled to be carried therefor in their cars. In such case, the passenger is left to find out, as best he can, as to the side, and place,

and time, at which he may enter the cars, and I think he is justified in relying upon his observation of the custom of the company on prior occasions, as to the time, place and manner of receiving and discharging passengers at the same place, and may assume such to be the rules and regulations of the company in that regard. I think, also, the passenger is justified in presuming, in this case, that the whole space upon either side of the track, at which it has been the custom of the railroad company to receive and discharge passengers at that locality, is not only a proper place to enter the cars, but that he may also assume that such places are according to the rules and regulations of the railroad company and are safe for that purpose, if, in so attempting to enter, he acts with such prudence and care as a reasonable man is bound to exercise.

Applying these rules to the case before us, here was the absence of any published rules and regulations as to these particulars, except in the newspapers. There was the absence of a passenger platform, to indicate the proper place for passengers to enter the cars; and though there was a narrow plank walk on the west side of the track, it was the custom of the company to receive and discharge passengers on both sides; and the plaintiff himself, on former occasions, had been received and discharged on the east side of the track, as had other passengers, all along from Genesee street to Union street, a distance of about two hundred feet in length. It was the defendants who had permitted, if they had not actually adopted, this way of receiving their passengers at this station, and they must be regarded as responsible for the safety of the regulation. It amounted to an invitation, at least to those who had been thus received and discharged, to enter the cars upon either side of the track. At common law, the carrier must use due care not only in conveying his passengers upon the journey, but in all preliminary matters, such as their reception into the cars, and for their accommodation while

waiting for it. This accommodation while waiting, of course, means for all ordinary occasions. They are liable for any defects or obstacles which, being left by *their negligence* in the path of the passenger on his way to or from the cars, cause an injury to him. (*Warren* v. *Fitchburgh Railroad Co.*, 8 *Allen,* 227, 231. *Sherman & Redfield on Negligence,* § 275.) A common carrier, by the very nature of his employment, invites the public to enter into his vehicles, and is liable for the negligence of his servants in taking passengers aboard of his vehicle. (*Drew* v. *Sixth Av. Railroad Co.*, 26 *N. Y. Rep.* 49.) He must allow his passengers a reasonable time in which to get on and off. (*Fairmont* v. *Stattler,* 54 *Penn. St.* 375.) He is responsible for an injury resulting from the slightest motion of his vehicle during the entrance or exit of a passenger, unless such motion was caused by circumstances over which he had no control, or unless he had no notice of the passenger's movement. (*Nichols* v. *Sixth Av. Railroad Co.*, 38 *N. Y. Rep.* 131.) And in all such cases, when the facts, or inferences to be drawn from them, are in some degree doubtful, the only proper rule is, to submit the whole matter to the jury, with proper instructions. (*Id., per Miller, J.*) The carrier must also use prudence in starting, and not set off with a sudden jerk which contributes to the injury. (*Lucas* v. *New Bedford, &c. Railroad Co.*, 6 *Gray,* 64, 67.) These views relate chiefly to the question of negligence of the defendants. Upon the whole view of the circumstances of this case, I concur in the opinion of Justice Hogeboom, in *McGrath* v. *Hudson River Railroad Co.*, (19 *How. Pr.* 214, *&c.,*) " that what constitutes negligence is often, perhaps generally, a difficult question to decide. It is determined, for the purposes of a court and jury, by an inference of the mind from the facts of the case; and as minds are differently constituted, the inferences from a given state of facts will not always be the same. The facts may be so clear and decided that the

inference of negligence is irresistible; but when either the facts or the inference to be drawn from them are in any degree doubtful, the better way is to submit the whole matter to a jury. This is the more necessary in cases of *negligence*, because of the great variety of considerations which enter into that question." Upon this point, therefore, I am of opinion that the order to nonsuit was error.

2. As to negligence of the plaintiff. It is claimed that the conceded fact, that the plaintiff attempted to get on the train while it was in motion, was, *per se*, such an act of negligence on his part as to bar a recovery. Ordinarily, I think this proposition would be sustained, as sound; but it is not, I think, an invariable rule. The contrary has been held. What is common, or ordinary neglect, is much more matter of fact than of law. (*Story on Bail.* § 11.) "Whether a plaintiff has been guilty of negligence, and thereby contributed to the injury he sustained, was a question of fact for the jury." (*Hegan* v. *Eighth Av. Railroad Co.*, 15 *N. Y. Rep.* 380, *per Paige, J.*) "There was evidence on both sides." "It by no means follows, that because there is no conflict in the testimony the *court* is to decide the issue on a question of law." (*Ireland* v. *Plank R. Co.*, 13 *N. Y.* 533, *per Johnson, J.*) "What is gross negligence, depends upon the particular circumstances of each case." (*Nolton* v. *West. Railroad Co.*, 15 *N. Y.* 449, *per Selden, J.*) Without multiplying cases of this character, which are numerous, it might perhaps be said, that in a case where a railroad company had their published cards or time tables, and their stations at which they sold tickets, and regularly stopped a given time; with all the conveniences of rooms, platforms and other arrangements, from which the passenger, by reasonable inquiry, and from the outward indications, could know the established regulations of the railroad company, as to the times of stopping and starting, he would be entitled to little consideration should he attempt to enter the car while

Phillips *v.* Rensselaer and Saratoga Railroad Company.

the train was moving; and should he sue for an injury so happening, if there is any case of negligence for which a nonsuit should be granted, that would be a case. But if, from motives of extreme economy of expense, a railroad company omits the ordinary conveniences of a ticket station, and safe and convenient arrangements for waiting passengers; and if, to save time, they receive and discharge passengers while the train is in slow motion; they can hardly allege negligence against one whom they have so received and discharged, if he but repeats an act which is only in conformity to their custom; and this case illustrates the soundness of the rule, that negligence in such particulars is a question of fact which belongs to the jury. True, there is evidence that this train of cars actually stopped at this station, and there is also evidence that it was advertised to stop at that time, on that day; but it does not appear that the plaintiff knew that fact. It is also true that two, of the five or six regular trains a day, were advertised, in the newspapers, to stop, and did stop as advertised; but it also appears that the other trains, not advertised to stop, did receive and discharge passengers along the track on either side, by slowing the train for that purpose, without stopping. I am stating the evidence on this point as the court was bound to regard it on a motion for nonsuit, conceding it to have been strongly controverted, only to show the propriety of having it submitted to the jury under a proper charge from the judge.

This point, it must also be conceded, had features in it unfavorable to the plaintiff, as matters of fact. Although he attempted to enter the car at two cars' length distant from the freight platform, yet he knew the cars were in motion at the time, and he could not be sure, in such a crowd and confusion, that he could enter before he might encounter this freight platform; and it might with propriety be urged as a fact to a jury, that having eyes to see,

and judgment to exercise, it was negligence in him to risk himself in the attempt to get in, with such danger in view. So it would be fair argument to reply that one train had just passed, so full that it would not stop; that a large crowd were waiting, all anxious to get in, on account of its being an extraordinary occasion, to see a pageant which all desired to witness; that the fear of being left, and seeing the rush of the crowd to enter, he was acting with the same degree of care as the whole multitude in that respect. These facts, circumstances and considerations were especially the province of a jury to consider and weigh, and ought not to be discarded from consideration by the judge. The case is peculiar in its features, as well as novel; it does not seem to me to present a case of absolute negligence *per se*, by either party, that should have withdrawn it from the jury. I have not deemed it needful to examine all the points presented upon the argument.

The view I have taken is sustained by the authority of *Sherman & Redfield on Negligence*. In their new work on that subject, they say: "A passenger ought not to be deemed guilty of contributory negligence when he only takes such risk as, *under the circumstances*, a prudent man would take. Thus, if cars passed in the same direction every few minutes, a *prudent* man would allow one to go by, rather than jump on while it was in motion; but if two or three passed in a day, no man in ordinary health and vigor would hesitate to get on the car while moving at a moderate speed, if the driver refused to stop. And where (as is frequently the case) the drivers of horse cars constantly refuse to come to a full stop for a male passenger, a prudent man would know that it would be useless to let any car pass for this reason, since he would fare no better if he waited for hours. Under such circumstances, we are decidedly of opinion that the act of getting on a car, while in such moderate motion that a prudent man

Phillips *v.* Rensselaer and Saratoga Railroad Company.

would not deem the act unsafe, should not be deemed negligent." (Pages 333, 334, § 282.)

If I am right in these views, that all the facts and circumstances constituting negligence, or those that are proper to be considered, should be left to a jury, then I think the learned judge erred, on the trial, in rejecting the evidence offered by the plaintiff. The offer was to prove by the plaintiff, as a witness, that before the time of the accident he had got on and off the cars, at that place, when the cars stopped no more than they did at this time; and that he had knowledge that they frequently did not stop, any more than to slow down as they did this time. This offer was objected to by the defendant, and the judge sustained the objection, and the plaintiff excepted.

Upon the whole, I think the case should have been submitted to the jury upon a proper charge as to the law, and that it was error to nonsuit. A new trial should be granted.

PARKER, J., concurred.

MILLER, P. J., dissented.

New trial granted.

[THIRD DEPARTMENT, GENERAL TERM, at Ogdensburgh, November 1, 1870. *Miller*, P. J., and *Potter* and *Parker*, Justices.]